**FITZGERALD MONROE FLYNN PC**
JACK FITZGERALD (SBN 257370)
*jfitzgerald@fmfpc.com*
MELANIE R. MONROE (SBN 275423)
*mmonroe@fmfpc.com*
TREVOR FLYNN (SBN 253362)
*tflynn@fmfpc.com*
ALLISON FERRARO (SBN 351455)
*aferraro@fmfpc.com*
DANIEL E. SACHS (SBN 361027)
*dsachs@fmfpc.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1741
**Counsel for Plaintiff**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERT FRIED, on behalf of himself, all others similarly situated, and the general public,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ALDI FOODS INC.,<br><br>　　　　　Defendant. | Case No: **'26CV0439 JLS KSC**<br><br>CLASS ACTION<br><br>**COMPLAINT FOR CONSUMER FRAUD AND BREACH OF EXPRESS AND IMPLIED WARRANTIES**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Albert Fried, on behalf of himself, all others similarly situated, and the general public, by and through his undersigned counsel, brings this action against ALDI Foods Inc. ("ALDI" or "Defendant"), and alleges the following upon his own knowledge, or where he lacks personal knowledge, upon information and belief, including the investigation of his counsel.

## INTRODUCTION

1. Through its private-label brand, "Nature's Nectar," Defendant markets and sells a variety of purported "100%" juice beverages, including at least Apple, Cranberry, Mango Tangerine, Grape, White Grape, and Mango Passion Juices (the "Products"[1]).

2. Defendant represents the Products are pure juice because that claim appeals to a significant segment of consumers who prefer pure juice products to juice products made with additional, fortifying ingredients.

3. Plaintiff and other consumers purchased the Products believing, based on Defendant's labeling, that they were 100%, pure juice.

4. In truth, the Products are made with additional ingredients, including fortifying ingredients, rendering any labeling or marketing claim that the Products are "100% Juice" literally false, and misleading.

5. Plaintiff brings this action on behalf of himself, similarly-situated Class Members, and the general public, to enjoin Defendant from deceptively marketing the Products in this manner, and to recover compensation for injured Class Members.

## JURISDICTION & VENUE

6. This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d)(2) (The Class Action Fairness Act) because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and at least one member of the class of Plaintiff is a citizen of a State different from Defendant. In addition, more than two-thirds of the

---

[1] To the extent any additional flavors or varieties were sold during the Class Period with the same false labeling alleged herein, this Complaint should be read to include them.

members of the class reside in states other than the state in which Defendant is a citizen and in which this case is filed, and therefore any exceptions to jurisdiction under 28 U.S.C. § 1332(d) do not apply.

7. The Court has personal jurisdiction over Defendant because it has purposely availed itself of the benefits and privileges of conducting business activities within California, including by distributing and selling the Products in California.

8. Venue is proper in this Southern District of California pursuant to 28 U.S.C. § 1391(b) and (c), because Defendant resides (*i.e.*, is subject to personal jurisdiction) in this district, and because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## PARTIES

9. Plaintiff Albert Fried is a California citizen because he resides and intends to continue to reside in Riverside County, California.

10. Defendant ALDI Foods Inc. is an Illinois corporation with its principal place of business in Batavia, Illinois.

## FACTS

### I. DEFENDANT FALSELY LABELS THE PRODUCTS AS "100% JUICE"

11. As Defendant knows, many consumers prefer, are willing to pay more for, and willing to purchase more often, juice products that are "100% Juice," as opposed to those containing additional ingredients. For example, because "100% juice carrie[s] engagement with consumers," in 2025, "[s]eventy-four percent of juice drink consumers . . . purchased 100% juice" compared only to 47% who purchased other juice drinks.[2]

12. Estimates put the U.S. 100% juice business at $9.79 billion annually as of 2024.

---

[2] Chloe Alverson, "2025 State of the Beverage Industry: Innovation Breathes New Life into Juice Market," *Beverage Indus.* (July 17, 2025), *available at* https://www.bevindustry.com/articles/97650-2025-state-of-the-beverage-industry-innovation-breathes-new-life-into-juice-market.

13. "100% Juice" claims are material to consumers because the "simplicity cut[s] through consumers' decision-making process."[3] By utilizing "100% Juice" claims, as Defendant does, "[t]here's just less thinking involved" for consumers, who "don't have to overanalyze the ingredients or wonder what else is in there . . . . They know what they're getting and can get in and out of stores, which can be sensory nightmares."[4]

14. During at least the four years preceding the filing of this Complaint and continuing today, Defendant has leveraged this consumer preference by prominently labeling the Products as "100% Juice." This is true of each variety of Products complained of herein. Exemplars of this labeling appear below.



---

[3] *Id.*

[4] *Id.*

3

*Fried v. ALDI Foods, Inc.*
CLASS ACTION COMPLAINT

15. All Products are labeled with the same, unqualified "100% Juice" claim. Reasonable consumers, including Plaintiff, interpret "100% Juice" to mean what it says: that the Products consist exclusively of the natural constituents of fruit juice and have not been nutritionally engineered or fortified.

## II. DEFENDANT'S "100% JUICE" PRODUCTS CONTAIN SYNTHETIC ASCORBIC ACID

16. Ascorbic acid was discovered in 1912, isolated in 1928, and first chemically synthesized in 1933.[5] By the 1960s, China was mass producing it.[6] Synthetic ascorbic acid, like that found in the Products, is typically derived from GMO corn and is heavily processed compared to Vitamin C from natural food sources.[7]

17. Practically speaking, virtually all Vitamin C found in mass-produced foods and beverages today, including the Products, is the low-cost, lab-made form: "[d]ue to the availability of synthetic sources of ascorbic acid, it has become the primary source of the substance for food handling and processing applications."[8]

18. Contrary to the Products' label claims, the Products are not "100% Juice." Rather, Defendant adds synthetic ascorbic acid to the Products' filtered water and juice concentrates to increase their Vitamin C content. As a result, the Products' Vitamin C levels materially exceed the naturally occurring Vitamin C levels present in apple, cranberry, grape, and citrus juices.

19. For example, natural apple and cranberry juices contain only a modest fraction of the Daily Value ("DV") for Vitamin C per serving, whereas ALDI's "100% Juice" Apple

---

[5] *Natural vs. Synthetic Vitamin C*, PURE SYNERGY, *available at* https://thesynergycompany.com/blogs/news/natural-vs-synthetic-vitamin-c.

[6] *Id.*

[7] *Beware of Ascorbic Acid: Synthetic Vitamin C*, NORTH COAST ORGANIC, *available at* https://www.northcoast.organic/beware-ascorbic-acid-synthetic-vitamin-c.

[8] *Ascorbic Acid Handling/Processing: Technical Evaluation Report*, USDA AGRIC. MKTG. SERV. NAT'L ORGANIC PROGRAM (July 17, 2019), *available at* https://www.ams.usda.gov/sites/default/files/media/AscorbicAcidTRFinal7172019.pdf.

contains 80% of the Vitamin C DV, and its Cranberry Product provides 100% of the DV. The same is true, to varying degrees, for each of the Products.

20. This Vitamin C content is not incidental to ordinary juice processing or preservation. Instead, it reflects Defendant's intentional nutrient fortification, materially altering the Products from their pure, "100% Juice" state. A beverage that has been fortified with synthetic ascorbic acid is not compositionally identical to pure fruit juice and cannot truthfully be marketed as "100% Juice."

21. Though Defendant sometimes pairs the "100% Juice" claim with statements such as, "from concentrate with added ingredient," and with front-label Vitamin C Daily Value callouts, these statements are contradictory, and likely to confuse reasonable consumers who understand "100% juice" to mean only what naturally comes from fruit, *i.e.*, juice which has not been fortified. That is especially true when considering "100% Juice" claims, like here, *cause* consumers to be less concerned with other aspects of the label or to "wonder what else is in there," *see*, *supra* ¶ 13.

### III. THE PRODUCTS' LABELING VIOLATES THE LAW

22. Defendant's labeling of the Products as "100% Juice" violates the California Health and Safety Code, which states, "Any food is misbranded if its labeling is false or misleading in any particular." Cal. Health & Safety Code § 110660; *see also* 21 U.S.C. § 343(a) (any food is misbranded where its "label is false or misleading in any particular.").

23. The Products' "100% Juice" claims are false or misleading for the reasons described herein.

### IV. PLAINTIFF'S PURCHASE, RELIANCE, AND INJURY

24. During the four years preceding the filing of this Complaint, Plaintiff Albert Fried occasionally purchased Defendant's Nature's Nectar branded "100% Juice" Apple Juice from ALDI locations in Vista and San Marcos, California and other locations. He purchased the Products approximately once per month during the four years preceding the date of this Complaint, with his last purchase in November 2025, when he realized the Products were made with added, synthetic ascorbic acid, and were not 100% juice.

25. When purchasing the product, Mr. Fried was seeking a beverage that was truly "100% juice," meaning comprised exclusively of fruit juice, and not containing added ingredients, especially synthetic ingredients. Whether the product was composed solely of juice was material to his purchasing decision, because he specifically sought products represented as pure juice rather than juice with added ingredients.

26. When purchasing Nature's Nectar Apple Juice, Mr. Fried was exposed to, read, and relied on the label claim, "100% Juice," which conveyed to him that the product consisted entirely of juice and did not contain added ingredients.

27. The "100% Juice" representation was and is deceptive because the Products, including ALDI's Nature's Nectar Apple Juice, are made with additional ingredients, including at least synthetic ascorbic acid. A beverage that has been fortified with synthetic ascorbic acid is not compositionally identical to pure fruit juice.

28. Mr. Fried acted reasonably in relying on the product's label. Defendant intentionally placed "100% Juice" on the Products' labels with the intent to induce average consumers, like Plaintiff, into believing the Products are 100% juice, and purchasing them as a result.

29. Mr. Fried paid more for the Nature's Nectar Apple Juice as falsely and deceptively labeled, and would not have purchased it or would not have been willing to pay as much for it if he knew it was not comprised only of fruit juice.

30. The Products cost more than similar products without misleading labeling and would have cost less absent Defendant's false and misleading statements.

31. Through the misleading "100% Juice" labeling claim, Defendant was able to gain a greater share of the market than it would have otherwise and was able to increase the size of the market.

32. For these reasons, the Products were worth less than what Mr. Fried and oher Class Members paid for them.

33. Mr. Fried and other Class Members lost money because of Defendant's deceptive claims and practices in that they did not receive what they paid for when purchasing the Products.

34. Mr. Fried intends to purchase 100% fruit juice drinks in the future and expects to continue shopping at ALDI stores where the Products are sold. He would purchase Products again if they were labeled truthfully. However, absent injunctive relief, Mr. Fried cannot rely on Defendant's "100% Juice" representations to make future purchasing decisions, because he has no way to know—at the point of sale—whether the Products are accurately labeled without scrutinizing ingredient lists and conducting investigations ordinary consumers do not undertake at the point of sale, including determining whether any non-juice or non-natural ingredients have been added. This ongoing inability to rely on the Products' labeling constitutes a continuing injury that can be remedied only through injunctive relief.

35. Plaintiff's substantive right to a marketplace free of fraud, where he is entitled to rely with confidence on representations made by Defendant, continues to be violated every time Plaintiff is exposed to the Products' misleading labeling claims.

36. Plaintiff's legal remedies are inadequate to prevent these future injuries.

## CLASS ACTION ALLEGATIONS

37. While reserving the right to redefine or amend the class definition prior to or as part of a motion seeking class certification, pursuant to Federal Rule of Civil Procedure 23, Plaintiff seeks to represent a class of all persons in California who, at any time from four years prior to the date of filing of this Complaint to the time a class is notified (the "Class Period"), purchased, for personal or household use, and not for resale or distribution, any of the Products (the "Class").

38. The members in the proposed Class are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of all Class Members in a single action will provide substantial benefits to the parties and Court.

39. Questions of law and fact common to Plaintiff and the Class include:

    a.    Whether Defendant communicated a message that the Products are comprised of 100% juice and therefore do not include additional ingredients;

    b.    Whether that message was material, or likely to be material, to a reasonable consumer;

    c.    Whether the challenged claim, "100% Juice," is false, misleading, or reasonably likely to deceive a reasonable consumer;

    d.    Whether Defendant's conduct is unfair or violates public policy;

    e.    Whether Defendant's conduct violates state or federal food statutes or regulations;

    f.    Whether Defendant made and breached warranties;

    g.    The proper amount of damages, including punitive damages;

    h.    The proper amount of restitution;

    i.    The proper scope of injunctive relief; and

    j.    The proper amount of attorneys' fees.

40. These common questions of law and fact predominate over questions that affect only individual Class Members.

41. Plaintiff's claims are typical of Class Members' claims because they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct. Specifically, all Class Members, including Plaintiff, were subjected to the same misleading and deceptive conduct when they purchased the Products and suffered economic injury because the Products are misrepresented. Absent Defendant's business practice of deceptively and unlawfully labeling the Products, Plaintiff and other Class Members would not have purchased them or would have paid less for them.

42. Plaintiff will fairly and adequately represent and protect the interests of the Class, has no interests incompatible with the interests of the Class, and has retained counsel competent and experienced in class action litigation, and specifically in litigation involving the false and misleading advertising of foods and beverages.

43. Class treatment is superior to other options for resolution of the controversy because the relief sought for each Class Member is small, such that, absent representative litigation, it would be infeasible for Class Members to redress the wrongs done to them.

44. Defendant has acted on grounds applicable to the Class, thereby making appropriate final injunctive and declaratory relief concerning the Class as a whole.

45. As a result of the foregoing, class treatment is appropriate under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3).

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

**Violations of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.***

46. Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

47. The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

48. The acts, omissions, misrepresentations, practices, and non-disclosures of Defendant as alleged herein constitute business acts and practices.

### Fraudulent

49. A statement or practice is fraudulent under the UCL if it is likely to deceive a significant portion of the public, applying an objective reasonable consumer test.

50. As set forth herein, Defendant's "100% Juice" labeling claims are likely to deceive reasonable consumers and the public.

### Unlawful

51. The acts alleged herein are "unlawful" under the UCL in that they violate at least the following laws:

- The False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*;
- The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*;
- The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.*; and

- The California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §§ 110100 *et seq*.

52. By violating these laws, Defendant has engaged in unlawful business acts and practices, which constitute unfair competition within the meaning of Business & Professions Code § 17200.

**Unfair**

53. Defendant's conduct with respect to the labeling, advertising, and sale of the Products was and is unfair because its conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers, and the utility of its conduct, if any, did and does not outweigh the gravity of the harm to its victims.

54. Defendant's conduct with respect to the labeling, advertising, and sale of the Products was and is also unfair because it violates public policy as declared by specific constitutional, statutory or regulatory provisions, including but not necessarily limited to the False Advertising Law, portions of the Federal Food, Drug, and Cosmetic Act, and portions of the California Sherman Food, Drug, and Cosmetic Law.

55. Defendant's conduct with respect to the labeling, advertising, and sale of the Products was and is also unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves could reasonably have avoided. Specifically, the increase in profits obtained by Defendant through the misleading labeling does not outweigh the harm to Class Members who were deceived into purchasing the Products believing they were comprised only of fruit juice, and not made with additional ingredients, including fortifying ingredients like synthetic ascorbic acid.

56. Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised Products to unwary consumers.

57. Plaintiff and Class Members are likely to continue to be damaged by Defendant's deceptive trade practices, because Defendant continues to disseminate misleading information. Thus, injunctive relief enjoining Defendant's deceptive practices is proper.

58. Defendant's conduct caused and continues to cause substantial injury to Plaintiff and other Class Members. Plaintiff has suffered injury in fact as a result of Defendant's unlawful conduct.

59. In accordance with Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices.

60. Plaintiff and the Class also seek an order for the restitution of all monies from the sale of the Products, which were unjustly acquired through acts of unlawful competition.

## SECOND CAUSE OF ACTION

**Violations of the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.***

61. Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

62. The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

63. It is also unlawful under the FAL to disseminate statements concerning property or services that are "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Id*.

64. As alleged herein, the labeling, policies, acts, and practices of Defendant relating to the Products misled consumers acting reasonably to believe they are comprised solely of 100% juice, and not made with additional ingredients.

65. Plaintiff suffered injury in fact as a result of Defendant's actions as set forth herein because Plaintiff purchased the Products in reliance on Defendant's false and misleading marketing claim that the Products were "100% Juice."

66. Defendant's business practices as alleged herein constitute unfair, deceptive, untrue, and misleading advertising pursuant to the FAL because Defendant has marketed the

11

Products in a manner that is untrue and misleading, which Defendant knew or reasonably should have known.

67. Defendant profited from the sale of the falsely and deceptively marketed the Products to unwary consumers.

68. As a result, Plaintiff, the Class, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

69. Pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiff, on behalf of himself and the Class, seeks an order enjoining Defendant from continuing to engage in deceptive business practices, false advertising, and any other act prohibited by law, including those set forth in this Complaint.

## THIRD CAUSE OF ACTION

**Violations of the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.***

70. Plaintiff realleges and incorporate the allegations elsewhere in the Complaint as if set forth fully herein.

71. The California Consumers Legal Remedies Act ("CLRA") prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

72. Defendant's false and misleading labeling and other policies, acts, and practices were designed to, and did, induce the purchase of the Products for personal, family, or household use by Plaintiff and Class Members, and violated and continue to violate the following sections of the CLRA:

 a. § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

 b. § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

 c. § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

d. § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

73. Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised Products to unwary consumers.

74. Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

75. Pursuant to California Civil Code § 1782, more than 30 days before filing this lawsuit, Plaintiff sent to Defendant by certified mail, return receipt requested, written notice of his claims and Defendant's particular violations of the Act, but Defendant has failed to implement remedial measures.

76. As a result, Plaintiff and the Class have suffered harm, and therefore seek actual damages resulting from purchases of the Products sold during the Class Period to all Class Members; punitive damages; injunctive relief in the form of modified advertising and a corrective advertising plan; restitution; and attorneys' fees and costs. *See* Cal. Civ. Code § 1782(d).

77. In compliance with Cal. Civ. Code § 1780(d), an affidavit of venue is filed concurrently herewith.

## FOURTH CAUSE OF ACTION

### Breaches of Express Warranties, Cal. Com. Code § 2313(1)

78. Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth fully herein.

79. Through the Products' labeling, Defendant made affirmations of fact or promises, or description of goods, that, *inter alia*, the Products are comprised of 100% fruit juice, and do not contain any additional ingredients.

80. These representations were part of the basis of the bargain in that Plaintiff and the Class purchased the Products in reasonable reliance on those statements. Cal. Com. Code § 2313(1).

81. Defendant breached its express warranty by selling Products that, for the reasons described herein, do not meet the above affirmations, promises, and product descriptions.

82. That breach actually and proximately caused injury in the form of the lost purchase price that Plaintiff and Class Members paid for the Products.

83. As a result, Plaintiff seeks on behalf of himself and other Class Members, actual damages arising as a result of Defendant's breaches of express warranties, including, without limitation, expectation damages.

## FIFTH CAUSE OF ACTION

**Breach of Implied Warranty of Merchantability, Cal. Com. Code § 2314**

84. Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth fully herein.

85. Defendant, through its acts set forth herein, in the sale, marketing, and promotion of the Products, made representations, that, *inter alia*, the Products are comprised of 100% fruit juice, and do not contain additional ingredients.

86. A "warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Cal. Com. Code § 2314(1). Defendant is a merchant with respect to the goods of this kind which were sold to Plaintiff and the Class, and there were, in the sale to Plaintiff and the Class, implied warranties that those goods were merchantable.

87. In order for goods to be "merchantable," they must "[c]onform to the promises or affirmations of fact made on the container or label." Cal. Com. Code § 2314(2)(f).

88. Defendant breached that warranty of merchantability because, for the reasons discussed herein, the Products are not 100% juice, but rather contain additional ingredients, including at least fortifying ingredients like ascorbic acid. Thus, the Products are not merchantable in that they do not conform to the promises and/or affirmations of fact made on the labels.

89. As an actual and proximate result of Defendant's conduct, Plaintiff and the Class did not receive goods as impliedly warranted by Defendant to be merchantable in that they did not conform to promises and affirmations made on the container or label of the goods.

90. As a result, Plaintiff seeks actual damages, including, without limitation, expectation damages.

## **PRAYER FOR RELIEF**

91. Wherefore, Plaintiff, on behalf of himself, all others similarly situated, and the general public, prays for judgment against Defendant as to each and every cause of action, and the following remedies:

   a. An Order declaring this action to be a proper class action, appointing Plaintiff as Class Representative, and appointing Plaintiff's undersigned counsel as Class Counsel;

   b. An Order requiring Defendant to bear the cost of Class Notice;

   c. An Order compelling Defendant to destroy all misleading and deceptive marketing materials and product labels, and to recall all offending Products;

   d. An Order compelling Defendant to cease its unfair business practices;

   e. An Order requiring Defendant to disgorge all monies, revenues, and profits obtained by means of any wrongful act or practice;

   f. An Order requiring Defendant to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, or untrue or misleading advertising, plus pre-and post-judgment interest thereon;

   g. An Order requiring Defendant to pay compensatory damages and punitive damages as permitted by law;

   h. An award of attorneys' fees and costs; and

   i. Any other and further relief that the Court deems necessary, just, or proper.

## JURY DEMAND

92. Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: January 23, 2026            /s/ Trevor Flynn

**FITZGERALD MONROE FLYNN PC**
JACK FITZGERALD
*jfitzgerald@fmfpc.com*
MELANIE R. MONROE
*mmonroe@fmfpc.com*
TREVOR FLYNN
*tflynn@fmfpc.com*
ALLISON FERRARO
*aferraro@fmfpc.com*
DANIEL E. SACHS
*dsachs@fmfpc.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1741

**Counsel for Plaintiff**